INDIANA & ARKANSAS LUMBER & MANUFACTURING COMPANY

v. ELDRIDGE.

Opinion delivered February 22, 1909.

TIMBER AND TREES—RIGHT TO CUT AND REMOVE—TIME.—Under a contract for the sale of growing timber whereby the grantee is authorized to cut and remove the timber within a certain period of time, the title to timber cut by the grantee within such period, but not removed from the land passes to such grantee, though it may be liable for trespass in entering the land for the purpose of removing such timber.

Appeal from Lee Circuit Court; *Hance N. Hutton*, Judge; reversed.

STATEMENT BY THE COURT.

The foundation of the present action is a contract which was exhibited with the complaint and reads as follows:
"J. R. Jarratt to Moss Tie Company.

"Know all men by these presents, that I, J. R. Jarratt, of the county of Lee and State of Arkansas, for and in consideration

of the sum of forty-five hundred dollars cash in hand paid, the receipt of which is hereby acknowledged, have this day sold and by these presents do bargain, sell and convey unto the T. J. Moss Tie Company (a corporation existing under the laws of the State of Missouri, with its principal office in the city of St. Louis, Mo.) all of white oak and species of white oak timber and all other classes or species of timber to be found on a certain tract or parcel of land located in Lee County, in the State of Arkansas, about six to nine miles from the city of Marianna, Arkansas, in an easterly direction, and more particularly described as follows, to-wit: S. W. 1-4 of sec. 2; Frl. S. 1-2 S. E. 1-4 and S. E. 1-4 S. W. 1-4 sec. 12; Frl. N. E. 1-4 and E 1-2 N. W. 1-4 sec. 13, T. 2 N., R. 4 E.; Frl. S. 1-2 sec. 20; N. 1-2 sec. 29 and the N. E. 1-4 S. E. 1-4 sec. 30, T. 2 N., R. 4 E., containing seventeen hundred and one and 4-100 acres more or less.

"And I hereby guaranty unto the said T. J. Moss Tie Company that I am the true and lawful owner of said timber, that it is free from all liens or incumbrances of any kind whatever, and that I have a perfect right to sell and convey the same; and I hereby covenant with the T. J. Moss Tie Company, its representatives and assigns, to warrant and defend the title to said timber against the lawful claims of all persons whomsoever.

"And I hereby grant unto the said T. J. Moss Tie Company, its representatives and assigns, the right, for a period of five years from the date hereof, to enter in and upon said land at any and all times for the purpose of cutting and removing said timber, together with the right, for the said period of five years from the date hereof, to make and use any wagon roadways at any and all such places as may be reasonably necessary to the convenience of hauling said timber from said lands.

"In testimony whereof I have hereunto set my hand and seal on this 30th day of March, 1902.

"J. R. Jarratt   (Seal)."

The Moss Tie Company conveyed the timber to the Indiana & Arkansas Lumber & Manufacturing Company. F. P. Eldridge purchased the lands from Jarratt with knowledge of the contract of sale to the Moss Tie Company, and brought this

suit to recover damages for the taking of certain logs alleged to belong to him as the owner of the lands described in the above contract.

The facts are practically undisputed, and are as follows: No timber was cut on said lands after the period of the time limit mentioned in the contract. Prior to that date, some trees had been felled on the land, cut into logs, and the logs were left lying on the ground where the trees fell. Logs to the number of 314, amounting to 156,824 feet, were hauled away from the land by the defendant company. These logs were not hauled away prior to the 30th day of May, 1907, on account of the water, but were hauled out as soon as the teams could get in where the logs lay.

There was a jury trial and verdict for plaintiff in the sum of $152.79, the amount found by the evidence to be the value of the logs. The defendant has duly prosecuted an appeal.

*H. F. Roleson,* for appellant.

The deed is an absolute grant of the timber on the land, containing a covenant of warranty. There is no provision for a forfeiture, nor any provision that the timber should be removed within any certain time. When the timber was severed from the soil and converted into saw logs, it became personal property, and the title thereto, in the absence of a forfeiture provision, remained in appellant, even after the expiration of the time limited by the deed. 32 L. R. A. 102; 102 N. W. (Minn.) 387; 96 Me. 57; 95 N. W. 1078; 69 Mo. App. 496; 69 N. E. 696; 42 So. (Ala.) 858; 107 S. W. 1045; 128 Ga. 563; 107 S. W. 733; 3 L. R. A. (N. S.) 649 and note; 55 L. R. A. 513, note.

*W. A. Compton,* for appellee.

The courts have generally construed contracts for the sale of standing timber, to be removed within a specified time, to be sales of only so many trees as the vendee might cut and remove within the time designated; the balance remaining the property of the vendor. 28 Am. & Eng. Enc. of L., (2d Ed.); 541. Under the great weight of authority, appellant was entitled under his contract only to such timber as was actually cut and removed within the time limited by his contract. 59 Mich. 263, 26 N. W. 488; 27 Mich. 451; 660 Mich. 626, 27 N. W.

697; 134 N. C. 116; 2 Keyes (N. Y.) 323; 13 Me. 122; 153 Mass. 388; 102 Mass. 375. See also 4 Am & Eng. Ann. Cas. 1047.

HART, J., (after stating the facts.) The facts in this case are undisputed. The timber was cut down or severed from the soil prior to the 30th day of May, 1907, and the logs were left lying on the ground where the trees fell. The sole question raised by the appeal is, could the appellant subsequent to the time limit remove the logs from the land without being liable for conversion? The question is an open one in this State. The point was raised in the case of *Plummer* v. *Reeves*, 83 Ark. 10, but the court held that, under the facts of that case, it was abstract, and was not necessary to be considered in determining the issues involved. The question has been many times considered by the courts of other States and there is great conflict and some confusion in the decisions. The latter has largely arisen because each decision is to a great extent based upon its own peculiar facts, and the courts have not always been apt in citing decisions upon which their opinions have been based. Some of the contracts considered contained other stipulations and facts, which made the discussion of the general principles here involved unnecessary to be determined; in others the decisions were placed upon the evident design of the parties to the contract under examination as shown by the particular expression and provisions thereof.

To illustrate, in the case of *Taylor-Brown Timber Company* v. *Wolf Creek Coal Company,* a Kentucky case, reported in 107 S. W. 733, the second paragraph of the syllabus reads as follows:

"In the case of contracts granting the right to cut and remove timber for a certain term, time is ordinarily the essence of the contract, and, where the contract by its terms expires, the rights of the vendees automatically terminate." An examination of the contract in that case shows that the grantees of the timber had four years "to cut and remove the trees and logs," thus showing by the express terms of the instrument that the parties designed that, not only the timber should be severed from the soil, but that the logs should also be removed from the land within the time limit. So in the case of *Salton-*

*stall* v. *Little,* (Pa.) 35 Am. Rep. 683, the language of the deed was "cut, remove, take and carry away."

In the case of *Kemble* v. *Dresser,* 1 Met. (Mass.) 271, 35 Am. Dec. 364, which is usually cited to support appellee's contention, the language used was that the wood should be "got off and removed within 2 years and not afterwards;" and thus, this case is distinguished in the case of *Plummer* v. *Prescott,* 43 N. H. 277.

The case of *King* v. *Merriman,* 38 Minn. 47, 35 N. W. 570, seems to sustain appellee's contention, but in the later case of *Alexander* v. *Bauer,* 94 Minn. 174, the Supreme Court of Minnesota, referring to the case, said: "The inference adopted by the learned judge who wrote the opinion in that case was not necessary to its decision, and, upon the view which we have taken, must be treated as *dicta* which should not control our present view." The court held that, upon the failure to remove the logs before the time limited, the title thereof did not revert to and become reinvested in the owner of the land.

Again in the case of *Pease* v. *Gibson,* 6 Me. 81, which is almost universally relied on by the courts which hold in favor of appellee's contention, the language used was *dicta,* and, if it may be said that it was not, it has been overruled by a later decision of that court to which reference will be made later.

In the case of *Hodges* v. *Buell,* 95 N. W. 1078, defendant by deed dated October 11, 1899, deeded land to complainant, with a reservation as follows: "First party reserves all saw timber on said land, with right to enter upon and remove same within two years." The Supreme Court of Michigan, after reviewing and discussing its former opinions on the subject, held that as to all timber standing on October 11, 1901, the title was in complainant, but that timber severed from the soil, though still on the premises, belonged to the defendant.

In the case of *Erskine* v. *Savage,* 96 Me. 57, the syllabus is as follows:

"A grantor in a deed reserved all hard and soft wood growth, with right of entry upon the premises at any and all times for a period of five years from the date of the deed with men and teams for the purpose of cutting and removing the

same. Within the five years, the plaintiff, who was the purchaser of the rights reserved by the grantor, cut all the wood reserved, but some of it had not been removed before the end or the period. *Held,* that the wood remained a part of the real estate until severed from the soil; that, as soon as it was severed within the period limited it became personal property, that the title then vested in the plaintiff, and that the plaintiff did not lose his title to the wood cut, but not removed, by failure to remove it within the five-year period."

In the case of *Plummer* v. *Prescott,* 43 N. H. 277, the court used the following language: "When, however, these trees are lawfully cut by the vendee within the time limited by the contract, they cease to be parcel of the land and become the personal property of the vendee; and, unless it can be considered that he has waived or forfeited his title to the timber by neglecting to remove it within the time, it must stand, for aught we can see, upon the footing of any other personal property of the vendee, which by his fault or neglect, and without any fault of the vendor, is upon the land of the latter. It is very clear, we think, that, having been lawfully severed from the land, it has become personal property, and, at any period before the expiration of the limited time at least, the title is vested in the vendee as fully as any other chattels. If this be the case, it is difficult to see how the title can be lost by the neglect to remove it."

In the case of *Zimmerman Mfg. Co.* v. *Daffin,* 42 So. 858, under a deed in all essential respects similar to the one under consideration, the Supreme Court of Alabama held that the grantee might remove the logs after the expiration of the time limited, and that he would not be liable for the value of the logs, but that for so doing the grantor might maintain against him an action for trespass, and recover such actual damages as he might have sustained to his possession.

In the case of *Hicks* v. *Smith,* 77 Wis. 146, the syllabus, which is an accurate statement of the facts and the point decided, reads as follows: "The pine timber upon certain lands was conveyed to the plaintiff, with a stipulation that it should be cut and removed from the lands before a specified date. Afterwards, with knowledge of the plaintiff's rights, the defend-

ants purchased the land.   *Held*, that all timber cut down and severed from the soil by the plaintiff before the date specified became his personal property, which he might remove within a reasonable time after said date."   To the same effect, see *Irons* v. *Webb*, (N. J. L.) 32 Am. Rep. 193; *Hoit* v. *Stratton Mills*, 54 N. H. 109, 20 Am. Rep. 119; *Richmond Land Co.* v. *Watson*, (Mo.) 107 S. W. 1045.

There are authorities like those of *Mengal Box Company* v. *Moore*, 114 Tenn. 596, 4 Am. & Eng. Ann. Cas. 1047, and *Bunch* v. *Elizabeth City Lumber Co.*, 134 N. C. 116, which hold that, under the contract of sale of standing timber with the right to cut and remove it within a specified time, the grantee has no title to the timber which has been felled and not taken away before the expiration of the time limit.   But we think that the weight of authority and the best considered cases which are strictly in point harmonize with the view that all timber cut down and severed from the soil by the grantee before the date specified in the contract of sale becomes his personal property, which he may remove in a reasonable time after said date, unless by the express terms of the contract a contrary intention is manifest.

In this case the contract of sale must be construed as an entire instrument, and we think that the words "cut and remove" in the connection in which they are used mean a severance from the soil.   It necessarily follows that when severed from the soil by the grantee the timber becomes its personal property, and subject to the law concerning personal property.

In the case of *Brock* v. *Smith*, 14 Ark. 432, the facts were that Smith without license entered upon vacant lands belonging to the United States, felled timber and split it into cord wood. Before the wood had been removed, Brock purchased the land from the United States.   Smith, although notified by Brock not to do so, went on the land and removed the wood.   Brock sued him in trespass for breaking and entering his close, and taking therefrom the wood in question.   It was held that Smith acquired no title to the wood, but that when the trees were severed they became personal property, and belonged to the owner of the soil, in this instance, the United States. It was held further that upon the facts stated Brock could not recover the value of

the wood, but was entitled to nominal damages for the wrongful and unauthrized act of Smith in entering upon the land.

The application of the principles decided in the case of *Brock* v. *Smith* to the present case is that, if the logs became personal property by being severed from the soil, then appellee could not recover for the value of the logs, but could only recover for the unauthorized acts of appellant in entering upon his land.

The judgment is therefore reversed, and the case dismissed.