## LANCASTER v. ROTH.

(Court of Civil Appeals of Texas. Texarkana. Feb. 27, 1913.)

1. LOGS AND LOGGING (§ 3*)—CONTRACTS—CONSTRUCTION OF BUILDINGS — RIGHT TO REMOVE.

Where a contract for the sale of timber growing on certain land provided that the grantee and his assignees might erect any houses, sheds, mills, kilns, or other improvements on the land which should be deemed necessary, and should have a reasonable time within which to remove them, and by a subsequent extension the landowner granted the purchaser the right to operate his mill and manufacture lumber from logs previously cut and on the skidway or in the woods, as long as necessary after the time for cutting timber from the forest had expired, 90 days after May 15th being fixed as the time within which the lumber should be removed, the grantee or his assigns was entitled to a reasonable time thereafter within which to remove the buildings or improvements on the land.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

2. LOGS AND LOGGING (§ 3*)—CONTRACT—REMOVAL—TIME—REMAINING TIMBER.

Where growing timber is sold and a time limit fixed for its removal, the vendee loses all such timber as remains after the expiration of the time agreed on, whether the contract be regarded as a sale of all the timber in specie or merely as a license to cut and remove the timber within a designated time.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

3. LOGS AND LOGGING (§ 3*)—CONTRACTS—CONSTRUCTION — TIME FOR REMOVAL — EXPIRATION—REMAINING LOGS AND LUMBER.

Where a contract for the sale of standing timber provided that it should be removed within a specified time, and that all the timber remaining on the land at the end of such period should become and remain the property of the seller, his heirs and assigns, but the seller granted certain extensions, the last one providing that, if at the end of the time all the lumber and logs cut had not been disposed of, the grantees should have such further time as was necessary to dry and market such lumber as they might have, to manufacture and market such logs as they might have on the skidway or in the woods, such neces-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

sary time for cutting to expire January 1, 1911, and the time to dry and remove such lumber being 90 days after May 15, 1911, the grantee or his assigns did not forfeit the lumber and logs in the millyard at the expiration of the final time, but were entitled to remove the same.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

**4. LOGS AND LOGGING (§ 3*)—REMOVAL—DEFENSES.**

Where a contract for the sale of standing timber required the grantee to remove it within a specified time, he was not excused for failure to remove within the time by the fact that weather conditions were such as to prevent the operation of his mill because of inability to obtain water.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

**5. INJUNCTION (§ 260*)—WRONGFUL INJUNCTION—DAMAGES.**

Where defendant was wrongfully prevented from removing his property from plaintiff's premises by an injunction which defendant sued out, defendant was entitled to recover the damages sustained on a plea of reconvention in the same suit.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 608; Dec. Dig. § 260.*]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by B. Roth against C. D. Lancaster. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Beard & Davidson, of Marshall, for appellant. Alvin G. Carter and P. M. Young, both of Marshall, for appellee.

HODGES, J. The appellee filed this suit in the court below against D. C. Driskell, Willis Driskell, and C. D. Lancaster. It is alleged that the appellee is the owner of the several tracts of land described in his petition; that on the 25th day of August, 1911, the Driskells and Lancaster entered upon his land and cut and removed therefrom timber and sawlogs amounting in value to $1,000; that they threatened to remove therefrom certain improvements situated thereon consisting of three houses, all of which are attached to and a part of the land, and are threatening to cut and remove certain sawlogs and lumber situated on said land which are claimed as the property of the plaintiff. He prays for the issuance of a writ of injunction enjoining the defendants from interfering with his possession of the land, from removing the houses and improvements referred to, and from cutting timber or removing from the land any sawlogs and lumber, and from in any manner interfering with plaintiff's possession of the premises. He further asks judgment for damages in the sum of $1,000 as the value of logs converted. While the petition did not in terms ask for the issuance of a temporary restraining order, the judge to whom it was presented directed one to issue upon the execution by Roth of a bond in the sum of $300, conditioned as required by law. The bond

was executed, filed, and approved by the clerk on the 28th day of August, 1911. The record does not contain the writ of injunction which thereafter issued; neither does it show that the Driskells filed any answer in the suit. Lancaster, after a general denial, answered in his own behalf, claiming that he had previously purchased from Roth all the timber situated upon the lands described, and had also acquired a right to erect the improvements referred to and to cut and manufacture the timber into lumber. He also alleges certain injuries sustained by him resulting from the issuance of the temporary injunction, and in reconvention asks for damages.

The evidence established the following facts: On November 15, 1906, Roth entered into a written contract by which, in consideration of the sum of $943.50, he sold to Lancaster "all of the merchantable pine timber suitable for saw timber then standing and growing" upon the tracts of land fully set out and described, situated in Harrison county, Tex. The concluding part of the contract is as follows: "To have and to hold all and singular the said timber unto the said C. D. Lancaster, his heirs and assigns forever. And I do hereby bind myself, my heirs and personal representatives to warrant and forever defend the said timber unto the said C. D. Lancaster, his heirs and assigns, against the claims of any and all persons whomsoever lawfully claiming or to claim the same or any part thereof. It is agreed, however, that a lien is expressly retained to secure the payment of said note, and, if default be made in two monthly installments, this contract shall become null and void. Said C. D. Lancaster shall have three years from and after the date of this instrument within which to cut and remove said timber from said land, and any and all timber remaining thereon at the end of the said three years shall become and remain the property of the said B. Roth, his heirs or assigns. I, the said B. Roth, do hereby also grant unto the said C. D. Lancaster or his assigns the right to open, make, and use logways, roads, or trams over and across any unimproved part of said land which he may think necessary, and to further erect or construct any houses, sheds, mills, kilns, or such other improvements on said land which he may deem necessary, and shall have reasonable time within which to remove them. It is further agreed that, as the timber is cut off of each tract, the said Lancaster shall turn it over to the said Roth, and, should the said Roth desire to put any part thereof into cultivation before the expiration of the three years' time given in which to cut said timber, said Roth shall have the right to do so, but said inclosure shall not be constructed so as to disturb the roads, logways, or trams to the other parts of said tract that

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

are uncut. It is further understood and agreed that said C. D. Lancaster shall not have the right to sell from said land any tie timber at all; this contract being made for merchantable sawmill pine timber."

On the 7th day of October, 1909, Lancaster entered into a contract with the Harrison County Lumber Company, a private corporation, by which he transferred and assigned to that company all of the rights which he had acquired from Roth. On the 14th day of December, 1909, Lancaster entered into another contract with the Harrison County Lumber Company by which he agreed to erect a mill upon the land on which the timber stood, and saw the timber into lumber. The Harrison County Lumber Company agreed to make him certain advances on the logs and lumber, and was to have the exclusive right to handle and sell the lumber manufactured by Lancaster, for which it was to receive the sum of $1 per thousand feet as commissions, in addition to other charges mentioned. On October 8, 1909, Roth, by the following written instrument, granted an extension of time: "State of Texas, County of Harrison. For and in consideration of the sum of two hundred and fifty dollars cash in hand paid by the Harrison County Lumber Company, the receipt of which is hereby acknowledged, I agree and extend to the Harrison County Lumber Company one year's extension from date of expiration of the contract above in which to carry out the agreement made with C. D. Lancaster. It is further understood in this agreement that at the expiration of this contract the said company is granted reasonable time within which to let what lumber may be on the ground to dry before moving same."

On January 3, 1910, the Harrison County Lumber Company transferred all of the rights which it had acquired from Lancaster to D. C. Driskell & Bro.; the latter agreeing to carry out the contract formerly entered into between Lancaster and the Harrison County Lumber Company. On November 15, 1910, Roth entered into the following contract with Driskell & Bro., giving still another extension of time: "State of Texas, County of Harrison. Know all men by these presents: That I, B. Roth, of Marshall, Harrison county, Texas, did on the 15th day of November, 1906, sell to C. D. Lancaster, of said county and state, for the sum of nine hundred and forty-three and ⁵⁰/₁₀₀ dollars, full payment of which is hereby acknowledged, four certain tracts of pine timber situated in Harrison county, Texas, and more particularly described in transfer from me, the said B. Roth, to C. D. Lancaster, recorded in the Deed Records of Harrison county, Texas, Book No. 70, page No. 239, said transfer giving to C. D. Lancaster three years' time from date of said transfer in which to remove said timber. On the 7th day of October, 1909, the above described

timber was transferred by deed from C. D. Lancaster to Harrison County Lumber Co., of Marshall, Harrison county, Texas. On the 8th day of October, 1909, I, the said B. Roth, granted and extended to the Harrison County Lumber Co. one year's additional time in which to remove timber from said four tracts of land, extension dating from November 15th, 1909, and expiring on the 15th day of November, 1910, which deed and time extension is shown by deed records of Harrison county, Texas, Book No. 70, page 237. On the 3d day of June, 1910, the above described timber and time extension was sold and transferred by the Harrison County Lumber Company to D. C. Driskell & Bro., of Marshall, Harrison county, Texas, as shown by the deed records of Harrison county, Texas, Book 74, page 364. It appearing of record that the said D. C. Driskell & Bro. are now the legal holders and owners of said timber contract, and are recognized as such by me, that the said D. C. Driskell & Bro. will require more time than has heretofore been granted in which to remove said timber, I, the said B. Roth, of Marshall, Harrison county, Texas, do this day for and in consideration of the sum of one hundred and twenty-five dollars to me in hand paid by D. C. Driskell & Bro., of Marshall, Harrison county, Texas, receipt of which is hereby acknowledged, grant and extend unto the said D. C. Driskell & Bro., their assigns or heirs, six 'months' extension of time in which to carry out the agreement made with C. D. Lancaster, said extension beginning on the 15th day of November, 1910, and expiring on the 15th day of April, 1911, both dates inclusive; and I further agree that in event the said D. C. Driskell & Bro. have not at the expiration of the extension herein granted disposed of all the lumber and logs that they have cut, then they, the said D. C. Driskell & Bro., their heirs or assigns, are to have such further time as may be necessary for them to dry and market such lumber as they may have, to manufacture and market such logs as they may have on the skidway or in the woods at the time of the expiration of the time herein granted. It is agreed and understood that the necessary time above mentioned for cutting timber in the woods will expire January 1st, 1911. The reasonable time for drying and removing lumber shall be ninety days after May 15th, 1911."

The testimony shows without any contradiction that the assignment made by Lancaster to the Harrison County Lumber Company, and which afterwards passed to Driskell & Bro., was intended by the parties thereto as a method of securing the advances made to Lancaster, and that Lancaster was still recognized as the real owner of the interest originally acquired from Roth, and was the chief beneficiary of the extensions of time which were granted to the Harrison County Lumber Company and to Driskell &

Bro. The evidence also shows that Lancaster entered upon the land in June, 1910, and erected the improvements referred to in the pleadings, consisting of sheds, millhouses, etc., set up his machinery, and began the operation of his sawmill, and continued the operation of same till this temporary injunction was granted. At the time the writ was issued, all of the machinery and the improvements were still upon the land. According to the testimony of Lancaster, he also had in his millyard a large quantity of lumber and a number of logs which had not been sawed, and was expecting to continue the operation of his mill until all of the logs were made into lumber. He claimed in his testimony that he was prevented from cutting all of the logs into lumber, within the time limit specified in the last extension, by the occurrence of an unusual drought which deprived him of the water necessary to operate his machinery.

The court submitted to the jury the issue as to whether or not the bill of sale from Lancaster to the Harrison County Lumber Company was intended as a mortgage, and directed that, if they found that it was not, to inquire no further, but to return a verdict for the plaintiff. But the court also instructed them that, if they found it was intended as a mortgage, they should consider other issues which were submitted. The court also gave this charge: "You are instructed to find for the defendant Lancaster for the sawmill, machinery, and tools on the premises, but you will find no damage on account of any injury that may have occurred to said sawmill, tools, and implements." The jury returned the following verdict: "We, the jury, find for the defendant Lancaster the mill, machinery, and tools on the premises. We find for the plaintiff, Roth, no money damages, but peaceable possession of everything on his premises, except what is given the defendant as above." The court thereupon rendered a judgment perpetually enjoining the defendants from interfering with Roth's possession of his premises, or with the lumber, logs, and houses remaining upon the land. It was further ordered that Lancaster recover the title and possession of the mill and machinery and tools located upon the land, and that he should have a reasonable time within which to remove them.

It is not essential, to a proper understanding of this case, that we notice in detail all of the different assignments of error presented in the appellant's brief. Some of them complain of charges of the court, and others of the failure of the court to give special charges. We shall discuss that assignment of error which involves the merits of the controversy, one which challenges the sufficiency of the evidence to support the verdict returned and the judgment rendered. The rights of the parties to this suit must be determined in the main by the terms of the original contract entered into between Roth and Lancaster, and the subsequent written agreements in which the time limit for removing the timber was extended. While those extensions were accorded to the Harrison County Lumber Company in one instance, and to Driskell & Bro. in another, they were intended for the benefit of Lancaster, who seems to have been the real owner of the right acquired originally from Roth. Lancaster testified that, at the time the temporary writ of injunction was issued and served on him, he had a large number of logs and lumber, as well as buildings and improvements, which had been erected and used in the operation of the sawmill situated on Roth's premises. The court and jury evidently took the view that everything, except the sawmill and machinery remaining on the premises at the expiration of the time limit, became the property of Roth under the terms of the original contract. In determining the correctness of that conclusion, we will first consider the rights of the parties with reference to the buildings and improvements placed upon the land and used by Lancaster in the operation of his sawmill.

[1] It is the general rule that buildings and other structures put upon the land of another by a tenant, or a licensee, with the consent of the owner, and with the understanding that they may be removed, remain the personal property of the tenant or licensee till the right of removal is lost by lapse of time or by some subsequent agreement inconsistent with the exercise of the right of removal. Wright v. Macdonnell, 88 Tex. 140, 30 S. W. 907; 22 Cyc. 8. In Wright v. Macdonnell, Justice Gaines discusses this question at considerable length. We quote the following from the opinion rendered by him as applicable to the facts now under consideration: "Property affixed to the land of another, under a license from the owner, is personal property (Northern, etc., Ry. Co. v. Canton Co. of Baltimore, 30 Md. 347), and it would seem that the party who so annexed it would have the right to remove it within a reasonable time after the expiration of the license, and probably within a reasonable time after he should receive notice from the owner of the soil to remove it. It is to be noted that the contract in this case expressly confers upon the defendant the right to erect the structures; and we see no good reason for holding that, because he was made a tenant, he was placed in a worse position than a mere licensee. If, as between the owner and a licensee, the structures would have been the personal property of the latter, and would not have become a part of the realty by a failure to remove them within a reasonable time, why should not the same rule apply as between the landlord and tenant, when the permission to make the structures is not a mere license,

but is an express provision in an agreement supported by a consideration?" Again he says: "If there has been no right of erecting and removing fixtures growing out of the mere relation of landlord and tenant, it would seem that an express agreement that the tenant should have the privilege of annexing certain structures to the freehold, and of removing them upon the expiration of the term, would indicate an intention, not only that the structures should be personalty, but also that they should remain the absolute property of the owner." It will be observed that in the original contract between Lancaster and Roth the former was expressly granted the right "to erect or construct any houses, sheds, mills, kilns, or such other improvements on said land which he may deem necessary, and shall have a reasonable time within which to remove them." The structures and buildings thus authorized were intended .to be used in the operation of the sawmill, and presumably those in controversy are such as were adapted to that business and as extensive as the business required. Under the last extension of time granted by Roth, Lancaster had the right to operate his mill in manufacturing lumber from logs previously cut and "on the skidway or in the woods," as long as it was necessary, after the time for cutting timber from the forest had expired. January 1, 1911, is designated as the final limit for cutting timber, and 90 days after May 15th is the time within which the lumber was to be removed. The operation of the mill might, under the agreement of the parties, be continued till August 15th, 90 days after May 15th. This was the practical construction placed by the parties themselves upon the contract, and is entitled to be considered in the determination of the proper construction to be here adopted. Wright v. Macdonnell, supra. It would naturally be comtemplated that, under such conditions, the buildings and improvements would be needed and used as long as the mill was operated, and should remain as long as its operation was permitted. That would necessitate their removal after the expiration of the time limit fixed for the occupancy of the premises for a mill site, and would justify Lancaster in claiming the contract right to remove them within a reasonable time after the 15th of August. Hence we conclude that, under the uncontradicted evidence, Lancaster still owned the buildings and improvements erected by him, and had not lost the right to remove them at the time this injunction was granted.

[2] The next question is, To whom did the logs and lumber remaining upon the premises belong after August 15th—Roth or Lancaster? When growing timber is sold and a time limit is fixed for its removal from the land upon which it stands, the vendee loses all such timber that remains after the expiration of the time agreed upon. This is true whether the contract be regarded as a sale of all of the timber in specie or as merely a license to cut and remove timber during the designated period. Mengal Box Co. v. Moore et al., 114 Tenn. 596, 87 S. W. 415, 4 Ann. Cas. 1047; Mahan v. Clark, 219 Pa. 229, 68 Atl. 667, 12 Ann. Cas. 729; I. & A. Lbr. & Mfg. Co. v. Eldridge, 89 Ark. 361, 116 S. W. 1173; Roundtree v. Cohn-Bock, 158 N. C. 153, 73 S. E. 796; Dye v. East Shore Woodenware Co., 169 Mich. 78, 134 N. W. 986. (In volumes 4 and 12 of Ann. Cas., above referred to, will be found copious notes in which numerous cases are collected.) It often becomes a difficult question to determine whether or not there has been a removal of the timber within the meaning of the particular contract under consideration so as to enable the vendee to lawfully claim it as his property. In some instances the courts have held that logs cut into proper lengths ready to be sawed into lumber, although still in the forest, are removed within the meaning of the contract and are not lost by the vendee by his failure to take them from the premises before the expiration of the time granted. Watson v. Gross, 112 Mo. App. 615, 87 S. W. 104; Macomber v. Detroit, etc., Ry. Co., 108 Mich. 491, 66 N. W. 376, 32 L. R. A. 102, 62 Am. St. Rep. 713; Hodges v. Buell, 134 Mich. 162, 95 N. W. 1078; Mahan v. Clark, supra; Golden v. Glock, 57 Wis. 118, 15 N. W. 12, 46 Am. Rep. 32; I. & A. Lbr. & Mfg. Co. v. Eldridge, supra. There are other cases which apparently hold to a contrary view. Roundtree v. Cohn-Bock, supra, and cases cited; Clark v. Ingram-Day Lumber Co., 90 Miss. 479, 43 South. 813. In the case last referred to, the contract provided for a sale of all sawlog timber on the land described. It was also provided that the grantee should have three years in which to remove it. It was held that, after the expiration of the time fixed by the contract, the grantee had no further right on the premises or to the timber either standing or which had been cut down and left lying upon the land. It is conceded in the opinion rendered in that case that there was much authority for a contrary holding.

In Butler v. McPherson Bros., 95 Miss. 635, 49 South. 257, a more recent case, the same court had under consideration a contract in some respects very similar to the one here involved. The deed by which the timber was sold contained the following reservation: "We expressly reserve and retain the right and title to any and all timber of said land therein conveyed and which we may remove therefrom at any time not later than the 1st day of October, 1905; and all the timber thereon which is not removed by us by said date is to be and remain the property of the said McPherson Bros., and the deed thereto is to be absolute from that time." The question involved in that case

was whether the timber which had been manufactured into cross-ties was lost by the failure of the owner to remove the ties from the land before the expiration of the time limit. The court held that they were not; that after the timber had been cut and made into ties it ceased to be timber, as that term was used in the contract.

In Georgia, where a sale of timber, coupled with a condition that it shall be removed within a specified time, is held to be a mere license to cut and remove timber during the period stipulated, a similar distinction is made. In Johnson v. Truitt, 122 Ga. 327, 50 S. E. 135, the contract contained this stipulation: "It is further understood and agreed that the said I. F. Johnson is to have 12 months from the date hereof to manufacture said timber into cross-ties and remove the same, and at the expiration of said time this lease expires and all the timber left thereon is to revert to the said Truitt, his heirs and assigns." It was held that this reversionary clause did not include ties which had been made from the timber conveyed. Quoting from a previous decision of the same court, the following language is used: " 'The law does not favor forfeitures, and will not enforce them in the absence of clearly stated conditions of forfeiture. Here, as we have said, there is no stated condition of forfeiture. If, by delay in taking the timber after the period named, damage should accrue to the owner of the land, it could not be questioned that such damage could be recovered; but it would be manifestly unjust that mere delay should forfeit both the appellant's money and his timber, and that the appellee should become the owner of the timber upon the strength of an implied forfeiture. We are inclined to think that Johnson had a right to go upon the land and remove the cross-ties after the expiration of the 12 months.' " The seeming conflict in the cases referred to is more apparent than real. The diversity in the terms of the different contracts under consideration in the different courts is sufficient, in most instances, to fully account for the varying conclusions reached. The main purpose of the court in all such controversies is and should be to ascertain the intention of the parties and to construe and enforce the contract in harmony with that intention. No stereotyped rule should be permitted to defeat that purpose, except where such rule is imposed upon the court by a higher authority and its observance made mandatory.

[3] Looking to the contract in this case, we find a sale of "standing and growing timber" for a valuable consideration, which has been paid. It is clear that Roth intended to sell, and Lancaster intended to buy, all the timber falling within the description contained in the conveyance. Lancaster was "to have and to hold all and singular the said timber forever." The title was express-ly warranted by Roth, and a lien reserved to secure the unpaid purchase money. Had there been no modifying provision inserted, this deed should be construed as an absolute conveyance of the timber as an interest in the realty, with no requirement for its removal thereafter. Lodwick Lbr. Co. v. Taylor, 100 Tex. 270, 98 S. W. 238, 123 Am. St. Rep. 803. But the deed contains this further provision: "Said C. D. Lancaster shall have three years from and after the date of this instrument within which to cut and remove said timber from said land, and any and all timber remaining thereon at the end of the said three years shall become and remain the property of the said B. Roth, his heirs or assigns." The subsequent extensions of time granted by Roth should be construed as having been made subject to the latter part of this provision, except in so far as they may be inconsistent with it. The last extension granted was for six months from November 15, 1910, and expired on April 15, 1911. That writing contains this stipulation: "And I further agree that in the event the said D. C. Driskell & Bro. have not at the expiration of the extension herein granted disposed of all the lumber and logs that they have cut, then they, the said D. C. Driskell & Bro., their heirs or assigns, are to have such further time as may be necessary for them to dry and market such lumber as they may have, to manufacture and market such logs as they may have on the skidway or in the woods at the time of the expiration of the time herein granted. It is agreed and understood that the necessary time above mentioned for cutting timber in the woods will expire January 1st, 1911. The reasonable time for drying and removing lumber shall be ninety days after May 15th, 1911." There seems to be no claim made by Lancaster to any of the standing timber or to any logs cut and left in the forest. We gather from his testimony that he is here asserting title to only the lumber and logs in his millyard. The question then is, did he lose those logs and that lumber by his failure to remove them from Roth's premises by the expiration of the time granted? Under the authorities previously referred to, as well as upon principles of common justice, we think this question should be answered in the negative. Roth's claim to the ownership of that property cannot be sustained, except upon the ground of a forfeiture by Lancaster under the terms of the original deed. It is but reiterating an old and familiar rule to say that forfeitures are not favored in law, and that a court of equity will not lend its power to aid in their enforcement, except where the legal right is clearly established. It was a part of Lancaster's contract that he was to have the privilege of establishing his mill for sawing this particular timber upon any part of the unimproved land he might select. This priv-

ilege or license was a part of his purchase. Here he was to erect his buildings, collect his logs, and operate his mill in sawing those logs into lumber. In a sense, the premises were as much his and under his personal control for the time being as if he had by a separate instrument leased them from Roth. Logs which had been brought to this place and stored for the purpose of being manufactured into lumber were removed from the native forest within the terms of the contract, and did not, like the standing timber remaining upon the land, "become and remain" the property of Roth. If the logs did not revert or become the property of Roth, for a still stronger reason the lumber was likewise exempt from that provision of the contract.

It probably should be said that, under the terms of the last extension granted by Roth, the right of Lancaster to further use and occupy the premises as a mill site, or as a place for storing his logs and lumber, terminated on August 15, 1911. But, for the reasons stated, this property was not forfeited by the failure to remove it on or previous to that date. We therefore further conclude that the verdict of the jury is opposed to the evidence in awarding to Roth the logs and lumber remaining at his mill at the time this suit was instituted, and that the court erred in that portion of his judgment enjoining Lancaster from thereafter removing the same from the premises.

[4] Evidently Roth is entitled to have Lancaster enjoined from further operating his mill upon the premises. The weather conditions urged by Lancaster were not such as to entitle him to relief against the express provisions of his contract.

[5] If, by wrongfully enjoining Lancaster from removing his property, Roth caused him any injury, Lancaster is entitled to a recovery on his plea in reconvention, commensurate with the damages sustained, which proximately resulted from the suing out of the writ. The court correctly instructed the jury that Lancaster was not entitled to any recovery on account of the damages to his tools and machinery, inasmuch as the writ did not interfere with his right to care for or remove that property from Roth's premises.

The judgment will be reversed, and the cause remanded, in order that the question of damages may be properly disposed of.