BROWN v. KAMMERMAN.

Opinion delivered March 23, 1925.

1. LOGS AND LOGGING—SALE OF TIMBER.—A contract whereby the owner of land agreed to sell the merchantable timber thereon, to be cut and removed by a certain date, the consideration being certain work to be done by the grantee by a certain date, and upon his failure to do the work the grantee to pay $4 per acre, *held* to be a sale of timber, and not a mere contract of employment.

2. LOGS AND LOGGING—TITLE TO TIMBER CUT.—Where timber was cut under a contract of sale, and left on the land by agreement of the owner, the title was in the purchaser, and the owner of the land had no title to convey to a purchaser of the land, though the latter had no notice of the sale of the timber.

3. EVIDENCE—MARKET VALUE OF TIMBER.—In replevin for logs or their value, testimony as to their value at the nearest market was admissible upon proof that they had no market value at the place from which they were taken.

4. REPLEVIN—MARKET VALUE OF CONVERTED TIMBER.—Where the owner of timber was prevented from receiving it by the purchaser of the property on which the timber was lying, under claim of ownership, the market value at the time the action of replevin was brought, and not at the time defendant claimed the timber was recoverable.

5. TRIAL—NECESSITY OF SPECIFIC OBJECTION TO INSTRUCTION.—In replevin for timber of its value an instruction that if the jury found for plaintiff they should find for him the value of the logs at the time the suit was brought, though not as full and accurate as it might have been, was not inherently erroneous or prejudicial in the absence of specific objection.

Appeal from Clay Circuit Court, Western District; *G. E. Keck*, Judge; affirmed.

*C. T. Bloodworth,* for appellant.

*Oliver & Oliver,* for appellee.

WOOD, J. On the 14th of January, 1922, D. Hopson and W. A. Kammerman entered into a contract whereby Hopson agreed to sell to Kammerman all the merchantable timber on the north half of a certain tract of land, the timber to be cut and removed by May 1, 1922. In consideration of the contract, Kammerman agreed to slash and cut all the timber before May 1, 1922, and he

was to have all of the timber so cut by him. If he failed
or refused to cut and slash all the timber before that
date, he was to pay Hopson the sum of $4 per acre for
the timber on the land. Kammerman entered upon the
performance of the contract and cut all the timber on
the tract, with the exception of a few trees, by the 26th
day of April, 1922. Kammerman told Hopson, the other
party to the contract, that he wanted to leave some of
the logs on the land until he could conveniently get them
off, and Hopson said, "That will be all right." After
May 1, 1922, Kammerman left on the land certain cypress
logs containing 11,575 feet. On October 25, 1922, Hop-
son sold to D. A. Brown the tract of land on which the
cypress logs cut by Kammerman were situated. After
Brown purchased the land, Kammerman undertook to
remove the logs, and Brown objected, and Kammerman
instituted this action in replevin against Brown to
recover the logs or their value.

Brown denied that Kammerman was the owner and
entitled to the possession of the logs. In addition to
the above, there was testimony on behalf of Kammerman
tending to prove that there were 11,575 feet of cypress
logs on the land, worth from fifteen to eighteen dollars
per thousand feet. There was also testimony to the
effect that the logs were damaged, and that four or five
dollars per thousand feet would be a reasonable market
value of the logs on the land at the time Brown pur-
chased the same from Hopson. Brown testified to the
effect that, at the time he purchased the land from Hop-
son, Hopson told him that Kammerman's time for cut-
ting the logs was out, and exhibited to Brown the con-
tract he had with Kammerman. Witness told Kammer-
man that he could have all the logs that he had cut and
left on the land, except the cypress. All the logs except
the cypress were on the land still. Witness hauled the
cypress logs and scaled them, there being something
over 10,000 feet. At the time he bought the land from
Hopson there were 35 or 36 big trees standing on the

land, and there was a strip that lacked 20 or 30 feet of being all slabs. Other witnesses corroborated Brown's testimony to the effect that there was a strip left on the land that had not been slashed in the fall of 1922, about 20 or 30 yards wide. Hopson corroborated the testimony of Kammerman to the effect that, after the time for the slashing of the timber under the contract had expired, he agreed with Kammerman to extend the time. At the time he sold the land to Brown he showed Brown witness' contract with Kammerman and told him about the extension. Witness didn't know, when he sold the land to Brown, that any logs were left there. If Kammerman said anything about logs being there, witness didn't remember it. When Brown was negotiating with the witness to buy the land, he asked witness if he was buying everything that was there, and witness told him, "Yes." At the time Brown bought the land witness didn't consider his contract with Kammerman had anything to do with it, except to show Brown the time that it expired. Hopson further testified that, at the time he sold the land to Brown, he didn't claim title to the logs that had been cut on the land.

Kammerman testified in rebuttal that Hopson's foreman inspected the work witness had done in slashing the land, and told witness that it was all right.

The court told the jury, in its instruction No. 4, that "if you find for the plaintiff, you find for him the value of the cypress logs at the time the suit was brought." The appellant duly excepted to the giving of this instruction. The defendant asked the court to instruct the jury to the effect that, if they found for the plaintiff, they should find for him in such sum as they believed from a preponderance of the evidence was the fair and reasonable market value of the logs at the time the claim was made to them by the defendant, and that the reasonable market value would mean the value at the time of the taking as they lay on the ground where they were claimed by the defendant, and didn't mean the value of

the lumber which might be cut from the logs. The court refused the defendant's prayer, to which ruling the defendant duly excepted. The jury returned a verdict in favor of the plaintiff below in the sum of $100. Judgment was entered in plaintiff's favor against the defendant for that sum, from which is this appeal.

1. The appellant contends that the contract under which the appellee claims title to the logs in controversy did not evidence a sale of timber to the appellee, but was a mere contract of employment, and therefore appellee had no title to the logs and no right to remove the same after May 1, 1922. We do not agree with learned counsel in this construction of the contract. The contract expressly provides: ''Hopson has agreed to sell to the said Kammerman all the merchantable timber on the north half of SW¼, section 4, T. 21 N, R. 4 E., * * * such timber to be cut and removed by May 1, 1922.'' True, the contract specified that the consideration for the sale was certain work to be performed by Kammerman by a certain day, and, in the event the work was not performed within that time, then the grantee, Kammerman, could pay to the grantor, Hopson, as an alternative consideration, the sum of $4 per acre for the timber on or before the date mentioned.

The undisputed evidence in the case shows that the appellee, the grantee, had paid the purchase price, or consideration, for the timber in controversy to his grantor, Hopson, by his labor, and that Hopson, the grantor, had accepted this consideration before he sold the land to the appellant Brown. The timber in controversy, as we understand the testimony, was felled by the appellee before May 1, 1922, but was not removed until after that time. But the grantor, Hopson, agreed with the appellee to extend the time so far as the removal of the timber was concerned. Thus the contract for the sale and purchase of the timber between the grantor and the grantee was completed before the land on which the timber was situated was sold to the appellant Brown.

At the time Hopson sold the land to Brown, Hopson had no title to the timber in controversy which he could convey to Brown. At that time the timber had been felled by the appellee. It was personal property, and appellee had paid the consideration, which had been accepted by the vendor of the timber, and an extension of time granted by him to the appellee to remove the timber after May 1, 1922.

In *Indiana & Arkansas Mfg. Co.* v. *Eldridge,* 89 Ark. 361-367, we said: "In this case the contract of sale must be construed as an entire instrument, and we think that the words 'cut and remove' in the connection in which they are used, mean a severance from the soil. It necessarily follows that, when severed from the soil by the grantee, the timber becomes its personal property, and subject to the law concerning personal property."

In *Griffin* v. *Anderson-Tully Co.,* 91 Ark. 292, we held (quoting syllabus): "Under a contract for the sale of growing timber, whereby the grantee is authorized to cut and remove timber within a certain period of time, the title to timber cut by the grantee within such period, but not removed from the land, passes to such grantee, together with a right for a reasonable time thereafter to remove the timber."

Here, as we have seen, the time was extended by mutual agreement between the grantor and grantee for the removal of the timber beyond the time specified in the written contract. Under the doctrine of the above cases, the title to the timber in controversy was unquestionably in the appellee.

2. The appellant next contends that the court erred in the admission of testimony and in its rulings on prayers for instructions concerning the value of the logs in controversy. The testimony on behalf of the appellee was to the effect that the logs in controversy had no market value at their location when replevied. But there was testimony tending to show that they had a market value when removed from the lands and taken to

the nearest market to be sawed into lumber. The court did not err in permitting the testimony as to such market value.

In *Clear Creek Oil & Gas Co.* v. *Bushmaier,* 165 Ark. 303, we said: "If there be no market value at the place of delivery, the value of the goods or other product should be determined at the nearest place where they have a market value, deducting the extra expense of delivering them there. The prices prevailing at the nearest place where the product can be sold, less transportation and distributing charges, show the value of such product at the place of delivery as nearly as it is possible to show such value." As the appellant refused to allow the appellee to remove his logs, and thus compelled the appellee to institute suit against him, the court did not err in instructing the jury that they should find for the appellee the value of the logs at the time of the institution of the suit, and did not err in refusing the prayer of appellant for instruction on the issue of value.

While instruction No. 4 given by the court was not as full and accurate as it should have been, yet it was not inherently erroneous, and there was no specific objection made to it. In the absence of such objection, there was no prejudicial error in giving it. In view of the undisputed evidence on the subject of value, it could not have misled the jury. There was ample testimony to sustain the amount of the verdict as fixed by the jury.

We find no reversible error in the record, and the judgment is therefore affirmed.