## DUGAL LOGGING, INC., *et al. v.* ARKANSAS PULPWOOD COMPANY, *et al.*

CA 98-973

988 S.W.2d 25

Court of Appeals of Arkansas
Division II
Opinion delivered March 17, 1999

*Gary D. McDonald*, for appellant Dugal Logging.

*Boswell, Tucker & Brewster,* by: *Dennis J. Davis,* for appellant L.T.M. Chips, Inc.

*Vickery & Landers P.L.L.C.,* by: *Michael R. Landers,* for appellant Anthony Forest Products Co.

*Harrell & Lindsey,* by: *Paul E. Lindsey,* for appellee.

JUDITH ROGERS, Judge. This is a case in which appellants were found liable for conversion, trespass, and the wrongful cutting of timber. The circuit judge, sitting as factfinder, awarded appellees damages of $18,211.90. Numerous issues are raised on appeal and cross-appeal. We find no error and affirm.

On July 5, 1991, Ellena Goodwin, part-owner of sixty acres in Union County, executed a timber-cutting agreement with Arkansas Timber Corporation. The agreement provided that Arkansas Timber would cut and remove certain timber on the land, with the provision that the contract must be complied with by July 5, 1992. On April 8, 1992, before the expiration of the deadline, Ellena Goodwin executed a timber deed on the same land to appellee Arkansas Pulpwood Company, for which she was paid $5,000. Neither Arkansas Timber nor Arkansas Pulpwood knew of the other's transaction with Goodwin.

Sometime in 1992, appellant Dugal Logging entered into a verbal agreement with Arkansas Timber to harvest the trees on the Goodwin tract. It is not known exactly when Dugal began its harvesting operation, but it is undisputed that the cutting and hauling were not completed before the July 5, 1992, deadline. Weight tickets from various mills revealed that deliveries occurred between July 7 and July 20, 1992. Among the mills that purchased the logs were appellants Anthony Forest Products Company, LTM Chips, Inc., and Riverwood International USA, Inc. Anthony paid Dugal $9,380.80 for the logs it purchased; LTM paid $13,816.85; and Riverwood[1] paid $9,150.58, for a total of $32,348.23.

---

[1] Dugal's sale to Riverwood was accomplished through a purchase order contract held by appellant Meshell Timber Company, Inc. Dugal paid Meshell $1,033.13 for the privilege of using the contract.

After Dugal received payment from the mills, it forwarded $12,541.20 to Arkansas Timber for stumpage, *i.e.*, the right to enter upon the land and cut trees. At about this same time, Arkansas Pulpwood, unaware that the trees on the Goodwin tract had already been harvested, began preparations to cut the trees pursuant to its April 8, 1992, timber deed. Upon discovering what had occurred, it filed suit against Arkansas Timber in Union County Circuit Court alleging a wrongful cutting of timber. By amended complaint, Arkansas Pulpwood added Dugal Logging, Meshell Timber, and the three above-named mills as defendants, charging them with conversion and trespass. These defendants filed cross-claims, seeking judgment over in the event they should be held liable: Dugal against Arkansas Timber; Riverwood against Meshell; and LTM, Anthony, and Meshell against Dugal.

The remaining parties in the case were added by joinder. During the pendency of the lawsuit, Dugal filed a motion for joinder, claiming that Ellena Goodwin was not the titled owner of the sixty acres upon which the timber had stood. Dugal alleged that other persons, including the heirs of W.R. McHaney, appellees herein, were indispensable parties. The trial court agreed and ordered joinder.

Trial was held on September 17, 1997, during which testimony was taken and voluminous documentary evidence presented. Thereafter, the trial judge issued an extensive, carefully-reasoned letter opinion. He found that, at the time of the timber cutting, the ownership interests in the sixty acres were as follows: Ellena Goodwin, one-fifth; Sallie Mae Hardy Freeman (Ellena's sister), one-fifth; and the McHaney heirs (McHaney was a grantee of Goodwin's three other siblings), three-fifths. He further found that, although Dugal began cutting the timber before the July 5, 1992, deadline, the substantial majority of the work was done after the deadline. Dugal was therefore held liable for trespass and conversion. Arkansas Timber and the three mills were also held liable for conversion. However, the judge determined that the parties' acts were not intentional, such as would justify the imposition of exemplary damages pursuant to Ark. Code Ann. § 18-60-102 (1987).

Compensatory damages were calculated by the trial judge as follows: the price Dugal received from the mills for the timber, $32,348.23, less Dugal's cost of harvesting, $14,136.33, for a total of $18,211.90 awarded to appellees jointly and severally against appellants. Prejudgment interest was added from July 20, 1992, to the date of trial. When all cross-claims were figured in, the ultimate judgment fell upon Dugal and Arkansas Timber. Additionally, Dugal was awarded $12,541.10 on its cross-claim against Arkansas Timber, representing the amount Dugal had paid for stumpage.

Ten issues are presented on appeal. The first two concern a motion to dismiss the appeal and a challenge to the circuit court's jurisdiction. The next two concern the merits of the case, and the final six involve the trial judge's award of damages.

Appellees and one of the appellants, Riverwood, argue that the appeal should be dismissed because a motion to extend time for filing the record was improperly granted. We certified this case to the Arkansas Supreme Court for resolution of this issue, and certification was accepted. *See Dugal Logging, Inc. v. Arkansas Pulpwood Co., Inc.*, 335 Ark. 546, 983 S.W.2d 126 (1998). On January 14, 1999, the supreme court denied the motion to dismiss the appeal and reassigned the remainder of the case to this court. *See Dugal Logging, Inc. v. Arkansas Pulpwood Co., Inc.*, 336 Ark. 55, 984 S.W.2d 410 (1999). The issue has thus been decided, and we need not address it further.

Next, appellant Dugal argues that the circuit court had no power to determine the ownership of the land upon which the timber was grown. Dugal claims, without citation to authority, that determination of ownership of real property is the exclusive province of the chancery court, apparently referring to the rule that a quiet title action, brought by one in possession of land, is to be filed in chancery court. *See Carter v. Phillips*, 291 Ark. 94, 722 S.W.2d 590 (1987). However, this was not a quiet title action. Proof of ownership in the property was submitted as part of the conversion and trespass counts. Each of those counts requires proof of an interest in the property converted or trespassed upon. *See Graysonia-Nashville Lumber Co. v. Wright*, 117 Ark. 151, 175

S.W. 405 (1915); *Gardner v. Robinson*, 42 Ark. App. 90, 854 S.W.2d 356 (1993). Thus, determination of ownership of property was not the main thrust of the lawsuit. This was a tort action of a type not generally cognizable in chancery. *See Chamberlain v. Newton County*, 266 Ark. 516, 587 S.W.2d 4 (1979). *See also Palmer v. Sanders*, 233 Ark. 1, 342 S.W.2d 300 (1961), holding that, in a conversion suit brought in circuit court, it was proper to present evidence as to ownership of the converted property.

■ We also note that Dugal filed no motion to transfer the case from circuit to chancery court. As between law and equity, any objection to jurisdiction is waived in the absence of a motion to transfer unless the court is wholly without jurisdiction, as in the case of a chancery court trying a criminal case or a probate matter. *First Nat'l Bank v. Arkansas Devel. Finance Authority*, 44 Ark. App. 143, 870 S.W.2d 400 (1994). *See also Stolz v. Franklin*, 258 Ark. 999, 531 S.W.2d 1 (1975), holding that appellant's objection to chancery court jurisdiction in an ejectment case was waived when no motion to transfer was made.[2]

■ Based upon the forgoing, we hold there was no error in the trial judge's exercise of jurisdiction.

We turn now to the merits of the case. The first matter to be addressed is whether there was sufficient evidence to prove ownership of the timber land. As we stated earlier, proof of ownership or the right to possession of property is necessary for the maintenance of trespass and conversion actions. *Graysonia-Nashville Lumber Co. v. Wright, supra; Gardner v. Robinson, supra; Big A Warehouse Distributors, Inc. v. Rye Auto Supply, Inc.*, 19 Ark. App. 286, 719 S.W.2d 716 (1986). At trial, appellees presented several deeds into evidence that traced the chain of title to the sixty acres to one Allen Hardy. Probate records from the guardianship proceeding of Sallie Mae Hardy Freeman revealed that Freeman and Ellena Goodwin were two of Allen Hardy's five children, the other three

---

[2] Separate appellant Anthony Forest Products, in its answer to appellees' third amended complaint, requested that the case be transferred to chancery court. Anthony does not urge this argument on appeal, and Dugal cannot benefit from an objection made on behalf of another defendant. *See generally Smith v. State*, 308 Ark. 603, 826 S.W.2d 256 (1992).

being Henry, Will, and Mary. The probate records stated that Allen Hardy was deceased. Other deeds in evidence showed that Henry, Will, and Mary deeded their share of the sixty acres to W.R. McHaney. From this evidence, the trial court determined that Goodwin and Freeman each had a one-fifth interest in the land, and that McHaney's heirs had a three-fifths interest.

Dugal argues that use of the probate records to establish a chain of title was improper, citing *Easterling v. Weedman*, 54 Ark. App. 22, 922 S.W.2d 735 (1996). In *Easterling*, the issue concerned the alleged negligence of an insurance agent in establishing an annuity. Appellee, in an attempt to prove the amount of his damages, entered probate documents into evidence showing the amount of the annuities. We held that the documents were hearsay and thus inadmissible.

*Easterling* is not applicable in this case because appellants made no objection on the basis of hearsay. The objection at trial, which was half-hearted at best, concerned the probative value of all the documents used to establish chain of title. A party cannot change his argument on appeal. *Blocker v. Blocker*, 57 Ark. App. 218, 944 S.W.2d 552 (1997). Additionally, appellants told the trial court that they had no problem with appellees' evidence so long as it was being offered to prove that those prosecuting the lawsuit had an interest in the land.

It is important to remember that the primary purpose of this action was not to establish ownership of property but to determine if a wrongful cutting of timber had occurred. The evidence presented by appellees, while it may have proved weak in a quiet title action, was sufficient for the purposes of this lawsuit.

We next address appellants' claim that, because Dugal began cutting timber before July 5, 1992, he should have been allowed a reasonable time in which to complete the job. Bobby Dugal, owner of Dugal Logging, testified that he did not remember when he began cutting on the Goodwin tract. He admitted that all hauling tickets were dated after the July 5 deadline. He said that the timber that was hauled beginning July 7 could have been cut that day or it could have been cut several days before. He acknowledged that most of the time he began hauling immedi-

ately after getting on a tract. The trial judge found that Dugal began cutting before July 5 but that the substantial majority of the work occurred after July 5.

In bench trials, the standard of review on appeal is whether the trial judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998).

The wording of the timber-cutting agreement between Goodwin and Arkansas Timber is especially important on this issue. The contract granted Arkansas Timber the right to cut and remove trees. It further provided that Arkansas Timber agreed to cut and remove trees and that it would have "until July 5, 1992, to comply with all the above stated terms." It is the duty of courts to enforce contracts as written and in accordance with the ordinary meaning of the language used and the overall intent and purpose of the parties. *Hancock v. Tri-State Ins. Co.*, 43 Ark. App. 47, 858 S.W.2d 152 (1993). The language used in this contract does not indicate that Arkansas Timber or its assigns, if they began cutting trees before the deadline, would be allowed to complete the majority of the work after the deadline.

Appellants cite several older cases in which a timber-cutter was allowed a reasonable period after his contractual deadline in which to complete his job. *See Griffin v. Anderson-Tully Co.*, 91 Ark. 292, 121 S.W. 297 (1909); *Indiana & Arkansas Lumber & Mfcting. Co.*, 89 Ark. 361, 116 S.W. 1173 (1909); and *Plummer v. Reeves*, 83 Ark. 10, 102 S.W. 376 (1907). However, those cases are distinguishable from the case at bar. Not only did they involve different contractual language, in each of them, all or most of the trees had been cut before the deadline, leaving only the hauling to be completed.

Based upon the forgoing, we cannot say that the trial judge's findings on the merits of the case were clearly erroneous.

The remaining issues concern the trial judge's award of damages. Appellants argue first that prejudgment interest should not have been awarded because appellees' damages were not ascertainable with reasonable certainty. We disagree. To support an

award of prejudgment interest, damages should be reasonably ascertainable both as to time and amount. *Mitcham v. First State Bank of Crossett*, 333 Ark. 598, 970 S.W.2d 267 (1998). If a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action, prejudgment interest should be awarded. *Killam v. Texas Oil & Gas Corp.*, 303 Ark. 547, 798 S.W.2d 419 (1990). Put another way, where the amount of damages is definitely ascertainable by mathematical computation or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion, prejudgment interest should be awarded. *Woodline Motor Freight v. Troutman Oil Co.*, 327 Ark. 448, 938 S.W.2d 565 (1997).

The criteria for awarding prejudgment interest were met in this case. The last shipment of logs taken by Dugal to the mills occurred July 20, 1992, thus providing an exact date upon which the conversion was complete and giving the trial judge an exact time from which to begin the running of prejudgment interest. Further, the amount of appellees' damages was capable of exact determination by use of mathematics rather than opinion or discretion. The amounts paid to the mills and the costs incurred by Dugal were capable of being ascertained at the time appellees' cause of action arose.

Appellants rely on *Kutait v. O'Roark*, 305 Ark. 538, 809 S.W.2d 371 (1991), in support of their argument. There, appellant trespassed on appellee's land and wrongfully removed shale, rock, and ground. The trial court awarded approximately $25,000 as damages but refused to award prejudgment interest. The supreme court upheld that decision. However, it did not hold that prejudgment interest was never recoverable in such a case. The basis for the holding was appellee's failure to specify a time when the trespass occurred and his vagueness with regard to the amount of damages he suffered. Appellee claimed that the trespass occurred "over the course of several weeks" during the summer and fall of 1985 and that "several thousand yards" of shale, rock, and ground were removed. By contrast, the trespass and conversion in this case occurred during a specified period of time and the

amount of damages was capable of exact determination during that time.

Appellants' next argument is that the trial judge failed to follow the rule for measuring damages in a wrongful cutting case, as set out in *Burbridge v. Bradley Lumber Co.*, 218 Ark. 897, 239 S.W.2d 285 (1951). In fact, *Burbridge* deals with a different type of wrongful cutting case. It concerns the situation in which a converter adds value to the timber by turning it into lumber or ties. In such situations, if the conversion was unintentional, the victim of the conversion is entitled to the value of the timber as enhanced less the converter's costs. The timber in this case was not enhanced, but was taken directly to the mill as it was cut. Nevertheless, the trial judge followed the general idea in *Burbridge* by awarding the value of the timber less Dugal's costs. We find no error on this point.

Appellants also argue that, as a component of the cost of harvesting, Dugal should have received credit for the $12,541.20 paid to Arkansas Timber for stumpage. Had the trial judge allowed such a credit, appellees' recovery would have been $5,670.70 rather than $18,211.90. We find no error on this point because the trial judge awarded Dugal judgment against Arkansas Timber for $12,541.20, thereby placing the burden of recovering this amount on a joint tortfeasor rather than the injured parties.

Finally, appellants argue that a judgment should have been entered against Ellena Goodwin for the $5,000 she received from Arkansas Pulpwood, with the appellants being given credit for that amount. No authority is cited nor any convincing argument made on this point. Further, the trial judge stated in his letter opinion that the $5,000 was not at issue in this proceeding. In any case, appellants offer no reason why those who were adjudged liable for the tortious conduct in this case should benefit by a judgment against one who was not adjudged liable.

On cross–appeal, we first consider appellees' claim that the trial judge erred in finding appellants were unintentional trespassers and converters. Had the court found otherwise, Dugal would not have been allowed to deduct his cost of harvesting the trees. *See Burbridge v. Bradley Lumber Co., supra.* The issue

of intent is a question of fact. *Undem v. First Nat'l Bank*, 46 Ark. App. 158, 879 S.W.2d 451 (1994). A trial judge's finding of fact will not be reversed unless clearly erroneous. *McQuillan v. Mercedes-Benz Credit Corp., supra.* There was evidence in the case from which the trial judge could have concluded that Dugal was never shown a copy of the timber–cutting agreement and never knew or had reason to know of the deadline. Under the circumstances, we cannot say that the trial judge's finding that the wrongful cutting was due to a mistake rather than willful or intentional conduct was clearly erroneous.

Appellees also question the manner in which the trial judge calculated Dugal's costs. Dugal testified that his logging costs were $9.60 per ton, an amount which included a profit, and $20 per cord for pine pulpwood. The trial judge used these figures to compute $14,136.33 in costs that Dugal was allowed to deduct. Appellees argue that Dugal should have offered evidence of his exact out-of-pocket costs.

The record as abstracted does not reveal that appellees objected to the method used by the trial judge in calculating Dugal's costs, nor does it reveal that they challenged or rebutted Dugal's figures during their examination of him. The argument is thus being made for the first time on appeal, and we do not consider such arguments. *Meadors v. Meadors*, 58 Ark. App. 96, 946 S.W.2d 724 (1997).

Affirmed on direct appeal and cross–appeal.

HART and STROUD, JJ., agree.